UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PRECISION CAM, INC., ) <br> KENNETH BOEHM, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> FOX & FOX, ) <br> BRUCE FOX, ) <br> ASSOCIATION FOR SMALL CLOSELY- ) <br> HELD BUSINESS ENTERPRISES also ) <br> known as ASBE, ) <br> LAWRENCE CRONIN ESTATE OF ) <br> LAWRENCE CRONIN, ) <br> CRONIN INSURANCE SERVICES, INC, ) <br> SEVERANCE PAY ADMINISTRATORS, ) <br> INC, ) <br> ) <br> Defendants. ) | No. 1:14-cv-00452-TWP-MJD |

**REPORT AND RECOMMENDATION ON
FOX DEFENDANTS' MOTION TO DISMISS**

This matter comes before the Court on the Fox Defendants' Motion to Dismiss Counts 2 and 3 of Plaintiffs' Amended Complaint. [Dkt. 54.] For the reasons that follow, the Magistrate Judge recommends that the Court **GRANT** Defendants' motion.

I.     **Background**

On March 21, 2014, Precision Cam, Inc. and Kenneth Boehm ("Plaintiffs") sued Bruce Fox and a California-based corporation, Fox & Fox, ("Fox Defendants"), alleging fraud and breach of fiduciary duty. [*See* Dkts. 1 & 56.] Plaintiffs later filed an amended complaint against the Fox Defendants and the Association for Small, Closely-Held Business Enterprises ("ASBE"), the estate of Lawrence Cronin ("Cronin"), Cronin Insurance Services, Inc. ("CIS"), and Severance Pay Administrators, Inc. ("SPA") (collectively "Defendants"). [Dkt. 51] In their

1

amended complaint, Plaintiffs allege breach of fiduciary duty, fraud, constructive fraud, breach of contract, gross negligence, and conversion. [*See id.*]

The lawsuit grew out of a 2008 agreement in which Plaintiffs allege that Precision Cam entered into a Term Life Insurance Plan ("the Plan") to insure the life of Mr. Boehm. [*Id.* ¶ 10.] The Plan called for Precision Cam to deposit $300,000 for administration by the Fox Defendants and for eventual payment of insurance premiums. [*Id.* ¶ 11.] The ASBE, however—rather than the Fox Defendants—"acted as the custodian of assets for the Plaintiffs." [*Id.* ¶ 12.]

Defendant Cronin was the signatory for ASBE. [*Id.* ¶ 13.] He, in turn, was also the "controlling executive of Severance Pay Administrators, Inc.," and he "was to authorize premium payments to be made to the Plan." [*Id.* ¶ 15.] When the Fox Defendants "attempted to locate premium payments to be made to the Plan for Plaintiffs," the Fox Defendants would communicate with a Cronin employee to have funds released to the Plan. [*Id.* ¶ 16.] Hence, although the amended complaint is not especially clear, it seems Plaintiffs allegedly deposited $300,000 dollars with Cronin and the ASBE, with the expectation that the Fox Defendants, over time, would ensure that this money would be released to pay premiums on the Term Life Insurance Plan.

Plaintiffs apparently received periodic reports on the balance of their deposited funds, and "[a]s last reported, the balance of the funds being administered by Fox was in excess of [$160,000]." [*Id.* ¶ 17.] On November 8, 2012, however, Precision Cam terminated the Plan and "requested that Fox return all funds then on deposit." [*Id.* ¶ 18.] Instead of receiving the $160,000 balance of unused funds, however, Plaintiffs received nothing. [*Id.* ¶ 19].

This lawsuit followed, and in in Counts 2 and 3 of their amended complaint, Plaintiffs contend that the unexplained loss of the $160,000 balance constitutes fraud and/or constructive

fraud. [*Id.* ¶¶ 24-31.] The Fox Defendants moved to dismiss these counts pursuant to Fed. R. Civ. P. 12(b)(6), [Dkt. 54], and the Court now addresses the Fox Defendants' motion.

## II. Discussion

The Fox Defendants have moved to dismiss Counts 2 and 3 of Plaintiffs' amended complaint for failure to state a claim upon which relief may be granted. [Dkt. 54 at 1 (citing Fed. R. Civ. P. 12(b)(6).] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff satisfies this requirement when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must thus contain "either direct or inferential allegations respecting all the material elements necessary to sustain recovery" under the relevant legal theory. *See Twombly*, 550 U.S. at 562.

In addition, Counts 2 and 3 of Plaintiffs' amended complaint allege fraud and constructive fraud. [Dkt. 51 ¶¶ 24-31.] Plaintiffs must therefore "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b).[1] The parties agree, [*see* Dkt. 55 at 4, Dkt. 63 at 2], that the Seventh Circuit's decision in *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Serves, Inc.*, 536 F.3d 663 (7th Cir. 2008), supplies the proper standard for this analysis. Thus, Plaintiffs must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at 668 (citations omitted). That is,

---

[1] This standard applies to both fraud and constructive fraud claims. *See, e.g.*, *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-CV-00205, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011), *aff'd sub nom. Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013).

3

they must plead with particularity the "who, what, when, where, and how" of the fraud. *Id.* Even under this heightened pleading standard, however, Plaintiffs need only "generally" allege "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). The Court will address Counts 2 and 3 in turn.

### A. Count 2: Fraud

Count 2 alleges "Fraud" and states that the "unexplained disappearance of the funds of Plaintiff administered, sponsored, in the custody of, or otherwise controlled by Defendants is unexplained under any other circumstances than fraud." [Dkt. 51 ¶ 25.] The elements of fraud in Indiana are "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013) (quoting *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992)). To survive a motion to dismiss, Plaintiffs' complaint must thus include "either direct or inferential allegations respecting all" six of these elements. *See Twombly*, 550 U.S. at 562.

#### 1. Material Misrepresentation

The first and second elements of fraud are 1) "a material misrepresentation of past or existing fact" that 2) "was untrue." *Kesling*, 997 N.E.2d at 335. Under Rule 9, Plaintiffs must include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City*, 536 F.3d at 668.

##### a. Identity of the Person Who Made the Misrepresentation

To allege the identity of a defendant accused of fraud, a complaint "must reference the individual or individuals who made fraudulent representations, rather than referring to . . . a

4

generalized group" of defendants. *RxUSA, Inc. v. Capital Returns, Inc.*, No. 06-C-00790, 2007 WL 2712958, at *6 (E.D. Wis. Sept. 14, 2007) (citing *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994)). Rule 9(b), in other words, "is not satisfied by lumping the defendants together without specifying who made the allegedly fraudulent representations." *Id.* As described below, Plaintiffs in this case have not satisfied this standard.

Plaintiffs' allegation of fraud is essentially that Defendants misled Plaintiffs into believing that Defendants were caring for Plaintiffs' funds and that Defendants were discharging their alleged fiduciary duties as safe-keepers of Plaintiffs' assets. [*See* Dkt. 51 ¶¶ 24-31.] Plaintiffs' amended complaint, however, does not sufficiently delineate each Defendants' role in this alleged fraud. Instead, it states "[*a*]*ll Defendants* were a party to or the perpetrators of [the] fraud on Plaintiffs." [Dkt. 51 ¶ 26 (emphasis added).] It then adds that "[a]ll Defendants" owed Plaintiffs a fiduciary duty, that "all Defendants" failed to inform Plaintiffs of alleged mishandling of funds, and that "no Defendants" could locate the funds. [*Id.* ¶¶ 27-28.] These references to the "generalized group" of Defendants do not satisfy Rule 9(b)'s requirements. *RxUSA*, 2007 WL 2712958, at *6; *see also Vicom*, 20 F.3d 777 (7th Cir. 1994) (finding that allegations of fraud conducted at direction of "all the defendants" were not sufficient).

Next, Plaintiffs' allegations include a specific claim that a misrepresentation occurred "in the reported balance of funds, as the last report stated the balance of funds to be One-Hundred Sixty-Thousand Dollars ($160,000.00)." [Dkt. 51 ¶ 30.] Plaintiffs, however, do not indicate who furnished this report, and thus have not identified with particularity which of the Defendants perpetrated this alleged fraud.

Plaintiffs' fraud count also incorporates by reference the factual background of Plaintiffs' complaint, [Dkt. 51 ¶ 24], but this does not cure their deficiency in identification. The factual

5

background states that the Fox Defendants "administered" Plaintiffs' funds; that ASBE "acted as the custodian of assets;" and that Cronin and Cronin's company "authorized premium payments" for Plaintiffs' Plan. [*Id.* ¶¶ 11-16.] The background, however, does not explain who among these various parties was responsible for providing information to Plaintiff, and thus does not identify who "failed to inform" Plaintiffs of the alleged mishandling of funds. [*See id.*] Likewise, the factual background merely states that the "unused moneys . . . have not been returned" and that "the Defendants in this matter have not provided the location of said funds." [*Id.* ¶ 19.] The complaint thus omits any identification of the specific persons or entities who failed to provide the information and funds that Plaintiff sought.

In their response, Plaintiffs argue that they have identified the "person who made the representation" because "the 'person' is [sic] Fox Defendants in inducing Plaintiffs to enter into the Plan." [Dkt. 63 at 3.] This argument suffers from multiple flaws: First, attributing the alleged misrepresentations to the "Fox Defendants" still attributes them to a collective group without "specifying who made the allegedly fraudulent representations." *RxUSA*, 2007 WL 2712958, at *6. Was it Bruce Fox himself? Was it one of his employees? Was it some other associate or agent of Fox & Fox?[2] Neither the complaint nor plaintiffs' response provides such insight.

Second, Plaintiffs attach to both their complaint and their response a copy of the "Term Life Insurance Plan Adoption Agreement."[3] [*See* Dkts. 51-1 & 63-1.] That document names Fox

---

[2] In some cases, "institutional identifications" can satisfy Rule 9(b), *see, e.g.*, *MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07CV1096-SEB-TAB, 2008 WL 3982072, at *3 (S.D. Ind. Aug. 22, 2008), such that individually identifying Fox & Fox as making misrepresentations might have sufficed. This rule, however, typically applies where the information necessary to more specifically plead is within the exclusive control of the defendants. *See, e.g.*, *Winforge, Inc. v. Coachmen Indus., Inc.*, No. 1:06CV619 SEBJMMS, 2007 WL 854025, at *5 (S.D. Ind. Mar. 13, 2007). Plaintiffs in this case have not made such a showing. [*See* Dkt. 51.] Additionally, Plaintiffs have not even provided a specific institutional identification, as they refer to "the Fox Defendants" in general, [*see id.*], rather than differentiating between Bruce Fox and Fox & Fox.

[3] The Court may properly consider such exhibits when ruling on a motion to dismiss. *See, e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

& Fox as the "Contract Administrator" for the Plan and assigns the Contract Administrator certain duties. [Dkt. 51-1 at 2.] Based on this document, Plaintiffs claim that the "Fox Defendants misrepresented to Plaintiffs the rights, duties and responsibilities of the parties under the Plan," such that the Fox Defendants fraudulently "induc[ed] Plaintiffs to enter into the Plan." [Dkt. 63 at 3.]

Plaintiffs' amended complaint, however, does not allege fraud in the inducement to enter the contract. Rather, it alleges that the fraud occurred when "all Defendants . . . failed to inform Plaintiffs" that they were not carrying out their fiduciary duties and when "all Defendants failed to inform Plaintiffs of the mishandling of funds." [Dkt. 51 ¶¶ 27-28.] Thus, even if Plaintiffs properly identify the Fox Defendants as making false statements in the adoption agreement,[4] the complaint itself alleges that the fraud occurred at a *later* date, sometime *after* adoption of the plan, when "all Defendants" failed to keep Plaintiffs informed about the status of their funds. Identifying the Fox Defendants as misrepresenting their duties in the adoption agreement is therefore unconnected to the fraud that Plaintiffs actually alleged, and thus does not identify who committed the alleged fraud. As a result, Plaintiffs have not sufficiently pled "the identity of the person who made the misrepresentation." *Windy City*, 536 F.3d at 668.

**b. Time, Place, and Content of the Misrepresentation**

Plaintiffs' amended complaint alleges that the "time frame in which [the] misrepresentation occurred was between the contract effective date of January 1, 2008 and the contract termination date of November 8, 2012." [Dkt. 51 ¶ 29.] This designation of a general time period does not satisfy the requirements of Rule 9(b). *See, e.g.*, *Eromon v. Grand Auto*

---

[4] This is itself a tenuous proposition, since neither the complaint nor Plaintiffs' response actually identifies the specific person within "the Fox Defendants" responsible for making the alleged misrepresentations in the adoption agreement. [*See* Dkts. 51 & 63.]

7

*Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004) ("The heightened standard requires more than an allegation that the fraud occurred sometime during a period of months or years"); *Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) ("[I]t is not enough to merely allege a period of months or years, or the duration of the activity.").

Plaintiffs have also attached an "Administrative and Fee Agreement" as an exhibit with their amended complaint. [*See* Dkt. 51-2.] This agreement purports[5] to require Fox & Fox, as Contract Administrator, to periodically furnish certain information to Plaintiffs. [*See id.* at 1 (requiring preparation of "annual statement"); *id.* at 2 (requiring preparation of certain tax information).] The amended complaint alleges that some of the reports about the balance of funds were false, [Dkt. 51 ¶ 30], but the complaint does not explain *which* reports were false and does not identify the particular time that any such false reports were made. [*See id.* ¶¶ 24-31.] Again, then, Plaintiffs have not adequately pled the "time . . . of the misrepresentation." *Windy City*, 536 F.3d at 668.

Plaintiffs also cite the "Administrative and Fee Agreement" to support that their argument that they have pled the "content" of the misrepresentation. [Dkt. 63 at 3.] They note that this agreement purportedly required Fox & Fox to perform "other duties as are delegated," [Dkt. 51-2 at 2], and that a separate document incorporated by reference—an Insured Security Program, [Dkt. 51-3]—required Fox & Fox to maintain the account of each life insurance participant in the Plan. [*Id.* at 25.] Because certain funds have now gone missing, Plaintiffs conclude the Fox Defendants have not maintained the accounts, and thus must have

---

[5] The Court says "purports" because the copy of the agreement Plaintiffs attached to their amended complaint was signed only by Plaintiff Kenneth Boehm. [*See* Dkt. 51-2 at 4.] The space for a signature from a representative of Fox & Fox was left blank. [*See id.*]

"misrepresented to Plaintiffs the rights, duties and responsibilities of the parties under the Plan." [Dkt. 63 at 3.]

This assertion is problematic for two reasons. First, as noted above, this claim does not relate to what Plaintiffs actually alleged in their complaint. The amended complaint claims that the fraud occurred when Defendants "failed to inform Plaintiffs of the mishandling of funds until the plan was terminated." [Dkt. 51 ¶ 28.] It does *not* allege that the Fox Defendants misrepresented their intentions regarding their right and duties at the time of entering the contract, and Plaintiffs' citation of those rights and duties therefore does little to support the claim of fraud actually contained in their complaint.

Further, to the extent that Plaintiffs intend to expand upon their allegations in the complaint, they may not do so: under Rule 9(b), "[t]he *complaint* must allege the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003) (emphasis original) (quotation omitted). A "charge of fraud must be *pleaded* with particularity," *id.* (emphasis original), such that Plaintiffs may not develop their claims in their responsive brief.

The second problem with Plaintiffs' assertion is more fundamental. Under Indiana law, fraud must be based upon a "material misrepresentation of *past or existing fact*." *Kesling*, 997 N.E.2d at 335 (emphasis added). Fraud thus "may not be based upon representations regarding future conduct, or upon broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Corry v. Jahn*, 972 N.E.2d 907, 919 (Ind. Ct. App. 2012). Thus, even if Plaintiffs *had* alleged in their complaint that the Fox Defendants' representations about their duties under the contract later proved inaccurate, such "representations regarding future conduct"

9

would not support a claim for fraud. Such representations may support a breach of contract claim, *see, e.g.*, *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992), and indeed, Plaintiffs have asserted just such a claim. [Dkt. 51 ¶¶ 37-43.] These representations, however, do not give rise to fraud, and Plaintiffs thus have not properly alleged the content of the misrepresentation supporting such a claim.

    **c. Method of Misrepresentation**

To satisfy Rule 9(b), Plaintiffs must allege the "the method by which the misrepresentation was communicated to the plaintiff." *Windy City*, 536 F.3d at 668. Plaintiffs' amended complaint states that the "method by which [the] misrepresentation occurred was . . . that all Defendants failed to inform Plaintiffs of the mishandling of funds until the plan was terminated and no Defendant could locate the funds owed to Plaintiffs, thereby giving Plaintiffs the false understanding that Defendants were carrying out their fiduciary duties." [Dkt. 51 ¶ 28.] In their response to Defendants' motion, Plaintiffs add that the alleged "withdrawal of funds from Plaintiffs' Plan without explanation or documentation to Plaintiffs, satisfies the 'method by which the fraud was communicated' requirement." [Dkt. 63 at 3.]

The Court does not agree. Plaintiffs acknowledge that they received at least some reports about the status of their funds, as they allege that "the last report stated the balance of the funds to be One-Hundred Sixty-Thousand Dollars ($160,000)." [Dkt. 51 ¶ 30.] This raises the question of what *other* reports Plaintiffs expected to receive, but the complaint is silent on this matter. The amended complaint simply alleges that Defendants failed to keep Plaintiffs informed of the status of their account, without indicating how, when, or by what means Defendants were supposed to communicate additional information. [*See id.* ¶¶ 24-31.] What "explanation," [Dkt 63 at 3], were Plaintiffs supposed to receive? What "documentation," [*id.*], were Defendants

10

supposed to produce? And how was this information to be transmitted to Plaintiffs? The amended complaint does not answer these questions, and thus falls short of Rule 9(b)'s requirements.[6]

For the reasons stated above, then, Plaintiffs have not pled the "who, what, when, where, and how" of the alleged misrepresentations, *Windy City*, 536 F.3d at 668, and have therefore failed to satisfy the heightened pleading requirements of Rule 9(b) with respect to the misrepresentation element of their fraud claim. Because a complaint must contain "either direct or inferential allegations respecting *all* the material elements necessary to sustain recovery," *see Twombly*, 550 U.S. at 562 (emphasis added), Plaintiffs' failure to properly plead the misrepresentation element renders their fraud claim deficient. The Magistrate Judge accordingly recommends that the Court **GRANT** Defendants' motion to dismiss Count 2 of Plaintiffs' amended complaint.

### 2. Remaining Elements

To plead their fraud claim, Plaintiffs must also allege that the false misrepresentation "(3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party," and (6) "proximately caused the injury or damage complained of." *Kesling*, 997 N.E.2d at 335. This court has previously stated that Rule 9(b) does not apply to such elements because they do not themselves involve a fraudulent statement or omission. *Frey v. Workhorse Custom Chassis LLC*, No. 1:03-CV-01896-DFH-VSS, 2005 WL 775927, at *12 (S.D. Ind. Mar. 25, 2005) ("[T]he heightened pleading

---

[6] This analysis holds true even if Plaintiffs allege a failure to communicate rather than an affirmative misrepresentation about the status of the funds. *See, e.g.*, *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805 (N.D. Ill. 2013) (applying Rule 9(b) pleading requirements to allegations of material omissions).

standard of Rule 9(b) pertains to only one element: fraudulent representations or omissions.").[7] Further, Rule 9(b) itself confirms that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, Plaintiffs need not plead with particularity the remaining elements of their fraud claim.

Nevertheless, Plaintiff must still comply with the general pleading standards as outlined above, and hence must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The alleged claim thus must be "plausible on its face," and pleading facts that "are 'merely consistent with' a defendant's liability" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Plaintiffs' complaint does not meet this standard.

The gist of Plaintiffs' fraud claim is that Defendants created the false impression that they "were carrying out their fiduciary duties" by "fail[ing] to inform Plaintiffs" of alleged mishandling of funds and by misreporting the balance of Plaintiffs' funds. [Dkt. 51 ¶¶ 27, 30.] As noted above, the complaint does not explain what sort of information Plaintiffs expected to receive, when they were to receive it, who was supposed to provide it, or who reported the allegedly erroneous balance. Without allegations that the Fox Defendants themselves were

---

[7] The applicability of Rule 9(b) to elements other than the misrepresentation in a fraud claim appears to be an unsettled question. *See, e.g.*, *Interserve, Inc. v. Fusion Garage PTE. Ltd.*, No. C-09-5812-RS-PSG, 2011 WL 500497, at *3 (N.D. Cal. Feb. 9, 2011) ("The Ninth Circuit has not addressed this issue directly. . . . Rule 9(b) may not apply to the reliance and damages elements of a fraud claim."); *see also Bear Ranch, LLC v. HeartBrand Beef, Inc.*, No. 6:12-CV-00014, 2013 WL 6190253, at *2 (S.D. Tex. Nov. 26, 2013) ("[T]he Fifth Circuit has not directly addressed this issue."). The Seventh Circuit has implied that Rule 9(b) extends to damages, *see Swanson v. Citibank*, N.A., 614 F.3d 400, 406 (7th Cir. 2010), but that case involved a plaintiff who "never alleged that she lost *anything*." *Id.* (emphasis added). Thus, her claims likely would have been dismissed under either the general pleading standards of Rule 8 or under the heightened standard of Rule 9(b). Additionally, "numerous courts have held that the Rule's language does not extend the heightened pleading requirement to allegations concerning damages in a fraud case." *Bear Ranch*, 2013 WL 6190253, at *2. In the absence of either party's citation to contrary authority, this Court will thus follow the standard articulated in *Frey*. Moreover, Plaintiffs' allegations, as described below, fail to satisfy even the general pleading standards of Rule 8, let alone Rule 9(b)'s heightened standards, such that resolving this question does not affect the disposition of Defendants' motion.

responsible for informing Plaintiff about their account, it is difficult to infer that the Fox Defendants acted "with knowledge," *Kesling*, 997 N.E.2d at 335, that such information had not been furnished or that any information that *was* provided was false. Likewise, without allegations establishing that the Fox Defendants themselves were required to provide information to Plaintiffs, the Court cannot infer that the Fox Defendants had the "intent to deceive" Plaintiffs by not providing such information. Certainly, a failure to provide information could be consistent with a scheme to defraud Plaintiffs, but pleading facts that are "merely consistent" with an allegation does not suffice. *See Twombly*, 550 U.S. at 557.

Moreover, Plaintiffs have not included in the amended complaint even a general averment that the Fox Defendants acted "knowingly" or "recklessly," or that they "intended" to deceive Plaintiffs. [*See* Dkt. 51.][8] Plaintiffs need not plead such mental states with the particularity of Rule 9(b), but their total failure to include even general allegations of a culpable mental state renders their pleading inadequate with respect to these elements.

The amended complaint also fails to plead reliance. In Indiana, the "party seeking to prove fraud must establish a right to rely" upon alleged misstatements. *Parke Cnty. v. Ropak, Inc.*, 526 N.E.2d 732, 737 (Ind. Ct. App. 1988). Plaintiffs in this case failed to do so because, as noted above, they included in their complaint little if any factual matter indicating that the Fox Defendants themselves were responsible for reporting on the status of Plaintiffs' funds. In other words, Plaintiffs' failure to establish that the Fox Defendants had any obligation to keep Plaintiffs informed about Plaintiffs' funds makes it impossible to infer that Plaintiffs "rightfully relied," *Kesling*, 997 N.E.2d at 335, upon any statements or omissions by the Fox Defendants.

---

[8] Notably, Plaintiffs *do* allege in Count 6 of their complaint—"Theft/Conversion"—that Defendants "knowingly or intentionally" exerted control over Plaintiffs' funds. [*Id.* ¶ 48.] The fact that they omitted such general allegations of culpability from their fraud claim thus weakens any inference that the Fox Defendants acted with such a mental state while engaged in the conduct allegedly constituting fraud.

Finally, Plaintiffs have not properly pled causation. The amended complaint states that Defendant ASBE—not the Fox Defendants— "acted as the custodian of assets for the Plaintiffs," [Dkt. 51 ¶ 12], and that Defendant Cronin—not the Fox Defendants—controlled the fund from which Plaintiff's premiums were to be paid. [*Id.* ¶ 15.] Also, the letter of termination that Plaintiffs attached to their amended complaint requested "that ASBE return all funds that *ASBE* is still holding" for Plaintiffs. [Dkt. 51-4 at 1 (emphasis added).] Plaintiffs' allegations thus indicate that entities *other* than the Fox Defendants controlled Plaintiffs' funds. Indeed, the Fox Defendants note that "the amended complaint alleges no involvement whatsoever by Fox & Fox and Bruce Fox in having custody of the $160,000 at issue." [Dkt. 55 at 2.] Because it was other parties that apparently controlled the funds at issue, the Court finds it implausible to conclude that the Fox Defendants caused the alleged disappearance of those funds, such that Plaintiffs have not adequately pled causation.

Overall, then, Plaintiffs have not provided "factual content" supporting a "reasonable inference that the Fox Defendants are liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Magistrate Judge accordingly recommends that the Court **GRANT** Defendants' motion to dismiss Count 2 of Plaintiffs' amended complaint.

### B. Count 3: Constructive Fraud

Count 3 alleges "Constructive Fraud" and states "[i]n the alternative to Actual Fraud, Defendants have committed Constructive Fraud." [Dkt. 51 ¶ 33.] The elements of constructive fraud are in Indiana are:

> 1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts, or by remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Tipton v. Isaacs*, No. 49A05-1311-CT-541, 2014 WL 4384102, at *5 (Ind. Ct. App. Sept. 5, 2014). To survive a motion to dismiss, Plaintiffs' complaint must thus include "either direct or inferential allegations respecting all" five of these elements. *See Twombly*, 550 U.S. at 562.

**1. Material Misrepresentation or Silence in Face of Duty to Speak**

The second element of constructive fraud is "the making of deceptive material misrepresentations of past or existing facts, or by remaining silent when a duty to speak exists." *Tipton*, 2014 WL 4384102, at *5. As noted above, Rule 9(b) applies to both fraud and constructive fraud claims, *see, e.g.*, *Grottenhuis*, 2011 WL 1107114, at *8, and to both affirmative statements and omissions. *See, e.g.*, *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d at 805. Thus, to properly plead the second element of their constructive fraud claim, Plaintiffs must satisfy Rule 9(b), and hence must plead "the identity of the person who made the misrepresentation [or omission], the time, place and content of the misrepresentation [or omission], and the method by which the misrepresentation [or omission] was [or should have been] communicated to the plaintiff." *Windy City*, 536 F.3d at 668.

Plaintiffs have not done so. The constructive fraud count of Plaintiffs' amended complaint alleges that Defendants owed a fiduciary duty to Plaintiffs; that they did not return money owed to the Plaintiffs; and that they benefited by failing to return the money. [Dkt. 51 ¶¶ 34-35.] The count adds no other factual allegations; rather, it incorporates by reference Plaintiffs' previous allegations. [*See* Dkt. 51 ¶¶ 32-36.]

As described above, however, Plaintiffs' previous allegations did not comply with Rule 9(b)'s heightened pleading requirements. Thus, Plaintiffs' failure to plead the "who, what, when, where, and how," *Windy City*, 536 F.3d at 668, of the alleged misrepresentation in their fraud claim also undermines their assertion of the same misrepresentations in their constructive fraud

claim. Plaintiffs therefore have not properly pled every element of their claim, and the Magistrate Judge accordingly recommends that the Court **GRANT** Defendants' motion to dismiss Count 3 of Plaintiffs' amended complaint.

### 2. Remaining Elements

As noted above, Plaintiffs need not plead the remaining elements of their constructive fraud claim with the particularity of Rule 9(b). Still, they must plead enough factual content to support a reasonable inference that each element has been satisfied.

The first remaining element is a duty owed by the party to be charged. *Tipton*, 2014 WL 4384102, at *5. Such a duty results from a "confidential or fiduciary" relationship between the parties. *McKibben v. Hughes*, No. 34A02-1311-PL-988, 2014 WL 7212858, at *5 (Ind. Ct. App. Dec. 19, 2014). This relationship may arise "by operation of law," as when parties share a relationship such as attorney and client, guardian and ward, principal and agent, pastor and parishioner, or parent and child. *Id.* Alternatively, this relationship may arise when "confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Id.* (quotation omitted).

Plaintiffs in this case have not alleged that any sort of predefined relationship such as attorney and client or guardian and ward exists or existed between Plaintiffs and the Fox Defendants. [*See* Dkts. 51 & 63.] Likewise, they have not asserted that they reposed trust in the Fox Defendants in a way that gave Defendants superiority and influence. [*See id.*] Instead, Plaintiffs' amended complaint alleges that "Defendants owed fiduciary duties to Plaintiffs pursuant to their contractual agreements." [Dkt. 51 ¶ 34.] Plaintiffs' responsive brief likewise claims that the "Fox Defendants owed fiduciary duties to Plaintiffs pursuant to their contractual agreements." [Dkt. 63 at 5.]

In Indiana, however, "[c]ontractual agreements do not give rise to a fiduciary relationship creating a duty." *Morgan Asset Holding Corp. v. CoBank*, ACB, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000). Thus, "parties may not rely on a contractual relationship to create a duty that, if breached, would form the basis of a constructive fraud claim." *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Plaintiffs' only alleged basis for the existence of a fiduciary duty thus does not create such a duty. As such, Plaintiffs have failed to plead factual content supporting the first element of their constructive fraud claim.

Next, Plaintiffs must plead reliance and causation. *See Tipton*, 2014 WL 4384102, at *5. As with their fraud claim, however, Plaintiffs have not alleged what information they relied upon the Fox Defendants to provide and do not explain how the Fox Defendants caused the disappearance of funds that were under the control of other entities. They have thus failed to adequately plead these elements.

Finally, Plaintiffs must plead "the gaining of an advantage by the party to be charged at the expense of the complaining party." *Tipton*, 2014 WL 4384102, at *5. Plaintiffs in this case allege that "Defendants have benefitted from failing to return Plaintiffs' money." [Dkt. 51 ¶ 3.] Retaining Plaintiffs' funds for their own purposes would naturally be "an advantage" for the Fox Defendants, but the Court finds it difficult to infer that *the Fox Defendants* benefitted from the retention of funds that—based on Plaintiffs' own allegations—were on deposit with *other* entities. In any case, the failure to properly allege the other elements of Plaintiffs' claim again requires the Magistrate Judge to recommend that the Court **GRANT** Defendants' motion to dismiss Count 3 of Plaintiffs' amended complaint.

### C. Dismissal Without Prejudice

The Court must finally decide whether to dismiss Plaintiffs' claims with or without prejudice. "Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). District courts, that is, "generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

Defendants in this case previously moved to dismiss Plaintiffs' fraud count, [Dkt. 21], but Plaintiffs amended their complaint before the Court ruled on this motion. [*See* Dkt. 50.] The Court thus has not previously dismissed Plaintiffs' claims, and in accordance with *Bausch* and *Foster*, the Magistrate Judge recommends that the Court dismiss Plaintiffs' claims without prejudice and with leave to re-plead.

The Court notes, however, that *Bausch* and *Foster* allow for "one" opportunity to amend, 630 F.3d at 562; 545 F.3d at 584, and that leave to amend may be properly denied for "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court thus advises Plaintiff to correct the numerous deficiencies outlined above, as further leave to amend or re-plead may not be forthcoming.

### III. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that the Court **GRANT** Defendants' Motion to Dismiss, [Dkt. 14], but that the Court do so without prejudice. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely

file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 01/20/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Matthew C. Boulton
BOULTON LAW GROUP, LLC
matt@boultonlawgrp.com

James D. Harbert
HINSHAW & CULBERTSON LLP
jharbert@hinshawlaw.com

Jordan M. Feffer
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601

Patrick Philip Devine
HINSHAW & CULBERTSON, LLP
pdevine@hinshawlaw.com

Joel Kirk LeBlanc
LEBLANC NETTLES DAVIS
kirk@indianalawgroup.com

Nelson A. Nettles
LEBLANC NETTLES DAVIS
nelson@indianalawgroup.com